**DONALD M. GINDY** (SBN# 45228)
LAW OFFICE OF DONALD M. GINDY
1925 Century Park East, Suite 650
Los Angeles CA, 90067
E-Mail: don@gindylaw.com
Telephone: (424) 284-3123

Attorney for Plaintiff,
VBCONVERSIONS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WEST REGION**

VBCONVERSIONS LLC, A California Limited Liability Company

Plaintiff,

v.

THE TAUNTON PRESS, INC., a Connecticut corporation; ROBERT NEILSON, an individual; JOSEPH MCDONALD, an individual; DOES 1-10, inclusive;

Defendants.

Case No: 15-cv-05305 ODW(AGRx)
[*Assigned to the Hon. Otis D. Wright II]*

**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFF, VBCONVERSIONS LLC, IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO RULE 56(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

[Filed Concurrently with Notice of Motion for Partial Summary Judgment, Statement of Uncontroverted Material, Declaration of David A. Crook, Declaration of Eddie Gomez, and Appendix of Exhibits]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION....................2

II. LEGAL STANDARD....................3

a. Motion for Summary Judgment or Partial Summary Judgment....................3

III. DISCUSSION....................4

IV. A PAYOR OF A LICENSE DOES NOT MAKE ONE A LICENSEE....................9

V. NO REASONABLE JURY COULD CONCLUDE THAT VBC ISSUED AN ENTERPRISE LICENSE TO THE TAUNTON PRESS....................10

VI. CONCLUSION....................13

# TABLE OF AUTHORITIES

**CASES** **PAGE**

*Adobe Sys., Inc. v. Stargate Software Inc.,* 216 F.Supp.2d 1051, 1059 (N.D.Cal.2002)........8

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)........10

*Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir., 2002)........4

*Fishman v. LaSalle National Bank,* 247 F.3d 300, 302 (1st Cir. 2001)........4

*Gilliam v. American Broadcasting Cos.,* 538 F.2d 14, 20 (2d Cir.1976)........4

*Graham v. James, 144 F.3d 229, 236* (2nd Cir., 1999)........7

*Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.,* 280 F.3d 744, 2002 U.S. App. LEXIS 1799, slip op. at 5-6 (7th Cir. 2002)........4

*Roddenberry v. Roddenberry*, 44 Cal. App.4th 634, 646 (1996)........9

*S.O.S. Inc. v. Payday Inc.*, 886 F.2nd 1081, 1087 (9th Cir., 1989)........3,7

*Timothy Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1110,1111 (9th Cir., 2010)........7

*Wall Data Corp. v. Los Angeles County Sheriff's Department,* 447 F.3d 769, 781 (9th Cir. 2006)........8

**RULES**

Fed R. Civ. P. Rule 56(a)........3

**STATUTES**

*17 U.S.C §106 (1&2)* ........2,8

*17 U.S.C. §106(3)* ........2,8,11

*28 U.S.C. §1338(a)*........3

*DMCA §1201*(a)(1)........2

**OTHER AUTHORITIES**

*Nimmer3-10, Nimmer on Copyright § 10.15, Matthew Bender & Co., Inc.........3*

*Ninth Circuit Manual of Model Jury Instructions, Civil, Instruction 4.2, West 2007..9*

iii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION.

Plaintiff, VBConversions LLC (hereinafter "VBC"), brings this Motion for Partial Summary Judgment against the named defendants. The action arises from a complaint for copyright infringement, vicarious and contributory infringement, and violation of the Digital Millennium Copyright Act, at 17 U.S.C.§1201(a)(1). It is alleged that Robert Neilson, a licensee of plaintiff VBConversions, exceeded the scope of the license and provided the confidential registration key he received as a licensee to his colleague, Joseph McDonald. Both men were at all times employees of defendant, The Taunton Press, Inc. (hereinafter "TTPI"). It is alleged the End User License Agreement (hereinafter "EULA") assented to by Neilson is a non-exclusive, non-transferable license to the VBC program entitled *VB.Net to C# Converter.* By transferring the individual license to Mr. McDonald, Mr. Neilson violated the express terms and conditions of his agreement as a licensee and 17 U.S.C. §106(3), the right of distribution to the public. Consequently, Mr. Neilson stands as a contributory copyright infringer. Mr. McDonald is the direct infringer by reason of his original use of the unlawful transfer who violated 17 U.S.C. §§106(1)&(2), rights of reproduction and adaptation. Taunton Press is liable to VBConversions under the theory of Respondeat Superior for the acts of its employees within the scope of their employment.

//

//

## II. LEGAL STANDARD.

### (a) Motion for Summary Judgment or Partial Summary Judgment.

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Rule 56(a) of the Federal Rules of Civil Procedure.*

Cases involving copyright issues belong in federal court under 28 U.S.C. §1338(a). The section provides for exclusive federal jurisdiction over those suits "arising under" the Copyright Act. VBC has alleged in its complaint that this matter does, in fact, arise under the Copyright Act. Allegations throughout the complaint refer to violation of terms and conditions of the EULA.

"More generally, when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement. (citing cases) If the licensee has sublicensed the work and is later held in breach, then "both the licensee and the sub-licensee can be held liable for acting without authorization and thereby infringing the licensor's copyright." *Nimmer3-10, Nimmer on Copyright § 10.15, Matthew Bender & Co., Inc.*

In *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1087 (9th Cir., 1989), it was held "The district court erred in assuming that a license to use a copyrighted work necessarily precludes infringement. A licensee infringes the owner's copyright if its

use exceeds the scope of its license. (citing) *Gilliam v. American Broadcasting Cos.,* 538 F.2d 14, 20 (2d Cir. 1976). The critical question is not the existence but the scope of the license."

"When a contractual interpretation makes no economic sense, that's an admissible and, in the limit, a compelling reason for rejecting it, as we just noted in *Hartford Fire Ins. Co. v. St. Paul Surplus Lines Ins. Co.,* 280 F.3d 744, 2002 U.S. App. LEXIS 1799, slip op. at 5-6 (7th Cir. 2002). "The presumption in commercial contracts is that the parties were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Fishman v. LaSalle National Bank,* 247 F.3d 300, 302 (1st Cir. 2001) (citations omitted)*Dispatch Automation, Inc. v. Richards*, 280 F.3d 1116, 1119 (7th Cir., 2002).

## III. DISCUSSION.

This case stands for a very simple proposition: if a good or service is not on the menu, you must conclude it isn't offered. There is absolutely nothing on the VBC web site, its license agreement or on its order page that would suggest an enterprise* license can be purchased. VBC's managing member, David A. Crook, in his attached declaration asserts that VBC does *not* offer enterprise licenses. VBC sells only singular licenses to individuals. Even if it did sell enterprise licenses,

*An *Enterprise license* is a software site license issued to a large company which allows unlimited use of the program throughout the organization. *PC Magazine, Online Encyclopedia, Ziff-Davis Publishing, 2015.*

Crook claims such a license would have to be negotiated on the basis of the number of persons who would have access to it and would be priced accordingly. *Crook Decl.* ¶8 Furthermore, the license agreement to which the company would be subject would have to be substantially amended to account for the widespread use.

Defendants claim that since Taunton bought the license, they infer Taunton Press is the licensee. *Answer,* ¶¶¶22, 23, 24, 25, and 27. Defendants wish to extrapolate that since VBC did not state you can't purchase an enterprise license, therefore you can. Visiting a hot dog stand does not logically lead one to believe they also serve sirloin steak. And, even if they did, it would not be the same price as a hot dog. It simply doesn't work that way.

Language found in the EULA to which Mr. Neilson and Mr. McDonald assented clarifies the terms and conditions imposed upon the licensee. Under the heading: **General License Grant to Install and Use Software Product** is the unmistakable language – "*You may install and use one copy of the Software Product on a single computer, device, workstation, terminal or other digital electronic or analog ("Device"). A license for the Software Product may not be shared. VBC grants You a revocable, limited, non-transferable, non-exclusive license to use the Software Product.*" (emphasis added) ***Exhibit*** "**B**," Page 2, attached hereto and incorporated by reference.

The language of the EULA is not ambiguous and clearly indicates to the reader the terms and conditions of the conveyance. Thus, you are granted (1) a license; (2)

for a single computer; (3) the license may not be shared; (4) it is non-transferable; and, (4) it is a revocable agreement. Nowhere within this document would a reasonable person find reference to an enterprise or company license or any indication that the grant here is other than singular. Moreover, the EULA also provides that the licensee is not able to rent, lease or **lend** the Software Product. *Id.* It is indisputable that Neilson lent the registration key to McDonald allowing the latter to unlock the Program.

The receipt showing the purchase of the license reflects the purchaser as Robert Neilson. It names no one else as purchaser despite the product being sent to the Taunton Pres or that it was paid for by someone else. The destination of the license is not a concern of VBC, nor is the matter of who pays. The only critical facts are the name of the purchaser and the "Regname" (registration name). The person named as Regname is also the person to whom the registration code is issued. To VBC, this is the critical fact. This is the party deemed to be the licensee. *Crook Decl.* ¶5; *Statement of Uncontroverted Facts ("SUF") No. 11,*; ***Exhibit*** "**C**," attached hereto and incorporated by reference. It is inconceivable that VBC would sell a company a license for 200 employees for $199.00 and charge a single purchaser the very same price.

With all of the above in mind, VBC alleges that when Robert Neilson transferred the confidential registration key to Joseph McDonald enabling the latter to unlock the software, Neilson exceeded the scope of the license as completely as

if he had never been a licensee at all. Licensees are generally not subject to claims of infringement, *Graham v. James*, 144 F.3d 229, 236 (2nd Cir., 1999), except when they exceed the terms and conditions of the license as Neilson has done here. *Id*., *S.O.S, Inc.*, at 1087. In *Timothy Vernor v. Autodesk, Inc.*, 621 F.3d 1102 (9th Cir., 2010), cert. denied 132 S.Ct. 105 (2011), the Ninth Circuit panel defined what distinguishes a license from a contract of sale. "We hold today that a software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." At 1111. Reviewing the VBC EULA, the reader will find that it satisfies all three elements defining a license.

(1)-"*The Software Product is licensed, not sold;*"

(2)-"*A license for the Software Product may not be shared. VBC grants you a revocable, limited, non-transferable, non-exclusive license to use the Software Product.*" *Id.*

(3)-"*You may not reverse engineer, decompile, or disassemble, modify or create derivative works of the Software Product, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation…You may not rent, lease, lend or provide conversion services to third parties with the Software Product.*" At Pages 1 and 2 of the EULA.

It is hard to imagine a more definite statement of a license and its notable use

restrictions. Therefore, when Robert Neilson lent his confidential registration key to Joseph McDonald he violated terms and conditions of his license. The scope of his license was violated by exceeding license counts, an activity explicitly forbidden by the license as set forth in Paragraph 14 of the EULA and the Exclusive Right of Distribution at 17 U.S.C. §106(3). See *Wall Data Corp. v. Los Angeles County Sheriff's Department,* 447 F.3d 769 (9th Cir. 2006). ("We recognize that computer licensing is generally an "honor system," in that there is little to stop a person with physical possession of software from installing it on multiple computers….One of the primary advantages of software, its ability to record, concentrate and convey information with unprecedented ease and speed, makes it extraordinarily vulnerable to illegal copying and piracy. [Thus,] it is important to acknowledge these special characteristics of the software industry and provide enhanced copyright protection for its inventors and developers.) Citing *Adobe Sys., Inc. v. Stargate Software Inc.,* 216 F.Supp.2d 1051, 1059 (N.D.Cal.2002). *Id.* at 781. The defendants violated the non-sharing provision above by providing the registration key that unlocks the software to McDonald. *Id.*

Mr. McDonald is also an infringer by using a non-transferable license issued to another. He is a stranger to the licensor in that he was unknown to VBC prior to his unlawful usage of the software. McDonald violated the right of reproduction and apparently adaptation. At 17 U.S.C. §§106(1) & (2). Thus, copyright shows itself as truly a right against the world. Finally, Taunton Press, as employer of both men

acting within the scope of employment, is liable to VBC upon a theory of Respondeat Superior. *Ninth Circuit Manual of Model Jury Instructions, Civil, Instruction 4.2,* West, 2007.

**IV. A PAYOR OF A LICENSE DOES NOT MAKE ONE A LICENSEE.**

The mere fact that this license was apparently paid for by an executive at Taunton Press does not lead one to conclude that either he or Taunton became the licensee. The objective facts state that the "purchaser" is Robert Neilson and the "Registration Name" that appears above the confidential registration code is also Robert Neilson. Neither the name Jay Hartley, nor Taunton Press appear as purchasers or registration names on the purchase receipt. The defendants are engaging in a hypothetical exercise that they purchased the license for Taunton without objective facts supporting that conclusion. "A theoretical meaning unsupported by evidence cannot be arbitrarily preferred over an alternative meaning which is supported simply because the theoretical meaning is within the abstract universe of linguistic possibility." *Roddenberry v. Roddenberry*, 44 Cal. App.4th 634, 646 (1996).

Further, it would make no economic sense for VBConversions to sell a license for $199.00 to an enterprise of 200 persons and charge an individual licensee the very same price. VBC has included as an exhibit the offer sheet of another software developer indicating how one sells an enterprise license or a single license. The prospective licensee can choose based on its numbers and the price

dictated by the licensor. ***Exhibit*** "***C***," attached hereto and incorporated by reference.

**V. NO REASONABLE JURY COULD CONCLUDE THAT VBC ISSUED AN ENTERPRISE LICENSE TO THE TAUNTON PRESS.**

It is suggested that defendants have presented a scarcity of facts that lead one to believe there is no genuine issue of fact to decide. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

1. VBC does not offer an enterprise license on its website, in its EULA or on its Order Form. There exist good company policies for not issuing that form of license. *Crook Decl*. ¶6

2. The identity of the Purchaser is a critical fact listed on the Order Form. The Purchaser is identified as Robert Neilson. *Id.,* at ¶*5.*

3. The identity of the person identified as "Regname" on the Order Form is a critical fact pointing to the proper licensee. This is the party who receives the confidential 25 digit alphanumeric code designed to prevent software piracy. The Registration Key or code is listed beneath that party's name on the Order Form. Here, the RegName is Robert Neilson. *Id.,* at ¶11.

4. It is the Purchaser, not VBC who enters the data seen on the Purchase Order Form. The defendants never indicated they desired an enterprise license, nor have they indicated that anyone other than Neilson is the proper Licensee. They should have entered the name of the Company if they sought an enterprise license.

5. The EULA is unambiguous in stating that a license may not be shared and is non-transferable. In other words, a licensee *may not lend* his registration key to another, nor *share* the Program for any purpose whatsoever. The confidential registration key provided to McDonald unlocked the software to unlimited use and for an unlimited time.

6. A violation of license counts is expressly prohibited and declared to be a breach of the license agreement. *Id.*, at ¶14.

7. Neilson and McDonald each had the Program simultaneously loaded on their computers. ***Exhibit*** "***D***," attached hereto and incorporated by reference. Neilson lent McDonald the registration key and the latter installed the Program on his computer. This is proof of violation of the Copyright Act by Neilson at 17 U.S.C. §106(3) (right of distribution) and the EULA for sharing and exceeding license counts. Neilson is therefore a contributory copyright infringer in that he materially assisted in the infringing activity.

8. The party who pays for the license is not a factor that determines the proper licensee. *Crook Decl*. ¶5

9. The location to where the license is issued is not a factor that is determinative of the proper licensee. *Id.*

10. Use of the Program is subject to the purchase of a legitimate registration key. The key as noted is: P0221-V0051-92PCS-F0B88-J9147. But, the proper licensee was Robert Neilson, not Joseph McDonald. The software looks to see if a

legitimate license has been issued and, if so, the Program remains unlocked regardless of the identity of the user. *Crook Decl.* ¶11. Thus, when Neilson passed the registration key to McDonald, the Program remained open and McDonald was able to apply the software as desired without interruption. McDonald had to register and assent to the license since the software read that he was using a new computer. *Id. at ¶12*

11. In its Answer, the defendants admit that both Robert Neilson and Joseph McDonald are employees of The Taunton Press. *Ans.* ¶5&6., *SUF, Nos. 5&6.*

12. In its Answer, the defendants admit Neilson affirmed the VBC license agreement for VBC's software. *Ans*. ¶10., *SUF, No. 13.*

13. In its Answer, the defendants admit that Taunton maintains a computer system that (VBC) "alleges was used to commit the acts which are the subject of the Complaint." *Ans.* ¶17., *SUF, No. 12.*

14. In its Answer, the defendants admit that "…McDonald used a version of the VB.Net to C# Converter program bought by Taunton and affirmed an End User License Agreement." *Ans*., ¶27., *SUF, No. 17*

15. The proper focus of the dispute should be on the intent of the licensor, VBC, in issuing to a licensee. The company may give or withhold the license based on its policies, not on the wishes of a prospective licensee. The Program is the licensor's property and it is the company that determines the appropriate terms and conditions of a license. ***Exhibit "B,"*** Page 1, "*If You do not agree to the terms*

*of this EULA, do not install, access or use the Software product."* In other words, this is a non-negotiable agreement which terms are dictated by the licensor. You may accept or reject the EULA as a whole. If rejected, no license is issued.

## VI. CONCLUSION

The defendants have each affirmed the EULA; they have assented to its terms and conditions; a legitimate license key was issued to the named purchaser, Robert Neilson, and his name adjoins the listed confidential registration code; Neilson, in violation of an explicit term of the EULA, lent and shared the registration key which unlocks the software program to his colleague, Joseph McDonald; McDonald was able to use the Program because he used the same registration key as Neilson; McDonald was required to register and assent to the EULA since he was using a different computer than his colleague; Neilson and McDonald had the Program installed on their computers at the same time; McDonald reproduced and apparently adapted the Program to the needs of his employer over a two year period; each man was at all times an employee of Taunton Press acting within the scope of employment.

With all of the above in mind, it is respectfully suggested that no reasonable jury could conclude that VBC issued an enterprise license to The Taunton Press. There is no genuine material factual dispute as to how this occurred. From these facts, the Court should conclude that the Motion for Partial Summary Judgment is appropriate and ought to be granted.

DATED: September 21, 2015

**LAW OFFICES OF DONALD M. GINDY**

DONALD M. GINDY
ATTORNEY FOR PLAINTIFF,
VBCONVERSIONS LLC